# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# FLORENCE DIVISION

| | |
|---|---|
| Janay Brodhurst-Figuero, on behalf of herself and all others similarly situated, | Civil Action No. |
| Plaintiff, | **COMPLAINT**<br>**(FLSA Collective Action)** |
| vs. | |
| S&W Investments, Inc. d/b/a S&W Transport Services; Logisticare Solutions, LLC, d/b/a Modivcare; James Mooney, individually; | **Jury Trial Requested** |
| Defendants. | |

Plaintiff Janay Brodhurst-Figuero ("Plaintiff"), individually and on behalf of all other similarly situated individuals, by way of her Complaint in the above-captioned matter, would allege and show unto this Honorable Court the following:

## NATURE OF THE ACTION

1. This action is brought individually and as a collective action under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, ("FLSA"), asserting that Plaintiff and all others similarly situated Patient Transporters were intentionally misclassified as independent contractors by S&W Investments, Inc. d/b/a S&W Transport (individually, "S&W"), Logisticare Solutions, LLC, d/b/a "Modivcare" (individually, "Modivcare"), James Mooney (individually, "Mooney") (collectively, "Defendants") and, as a result were deprived of overtime in violation of federal law. Plaintiff brings this case as a collective

1

action on behalf of a group of Patient Transporters who worked for the Defendants, who were responsible for non-emergency transport of Defendants' medical patient clients to and from medical appointments, within the three years prior to the filing of this Complaint.

## PARTIES, JURISDICTION, AND VENUE

2.     Plaintiff is a citizen and resident of Georgetown County, South Carolina. Plaintiff was employed as a Patient Transporter for Defendants until on or around August 10, 2021, when she was constructively discharged. Plaintiff consents to participate in this lawsuit. Exhibit A hereto.

3.     Defendant S&W is a limited liability company organized and existing pursuant to the laws of the State of South Carolina, and has conducted its business in South Carolina and other states. S&W maintains an office at 3454 Waccamaw Blvd., Unit C in Myrtle Beach, South Carolina 29579.

4.     Defendant Modivcare is a limited liability company organized and existing pursuant to the laws of the State of Delaware, and has its conducted business in South Carolina and states, upon information and belief.

5.     Upon information and belief, Defendant Mooney, is domiciled in Horry County, South Carolina.

6.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), because this action is based on the FLSA.

7.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

**JOINT EMPLOYER/ CO-EMPLOYER ALLEGATIONS**

8.      Either formally or as a matter of practice, S&W and Modivcare jointly determine, share or allocate the power to direct, control or supervise Plaintiff and all others similarly situated. For example, upon information and belief, Patient Transporters' schedules were dictated by Modivcare clients' needs, which were dictated to S&W.

9.      Either formally or as a matter of practice, S&W and Modivcare jointly determine, share or allocate the power to directly or indirectly hire or fire the worker or modify the terms or conditions of the worker's employment. For example, upon information and belief, if Modivcare received a complaint regarding a Patient Transporter contracted with S&W, Modivcare would dictate discipline of those workers to S&W, and S&W would implement and enforce the discipline.

10.     Upon information and belief, S&W and Modivcare have developed a close business relationship with each other over years, wherein Modivcare fields calls from medical clients requiring non-emergency transportation assistance, which requests Modivcare then forwards to S&W for Patient Transporter dispatch.

11.     Either formally or as a matter of practice, S&W and Modivcare jointly determine, share or allocate responsibility over the functions ordinarily carried out by an employer. For example, upon information and belief, Modivcare approves the schedules of the Patient Transporters, while S&W both provides the vehicles for use by the Patient Transporters, as well as handles payroll for the Patient Transporters.

12.     For the reasons set forth above, S&W and Modivcare are "joint employers" of Patient Transporters, including Plaintiff.

13.     At all times relevant to this Complaint, Defendant Mooney, in his capacity as General Manager for S&W, exercises a high level of control over the FLSA violations herein, including but not limited to intentionally misrepresenting Plaintiff and all those similarly situated as "independent contractors" rather than employees; refusing to review said characterization; and refusing to pay overtime and other wages to Plaintiff and all those similarly situated. As such, Defendant Mooney was a "co-employer" of Plaintiff and all others similarly situated for purposes of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

14.     Plaintiff brings this action as a collective action on behalf of a class of individuals similarly situated. Specifically, Plaintiff brings these claims under the Fair Labor Standards Act as a collective action and will request the Court to grant conditional certification under 29 U.S.C. § 216(b), and to order notices to potential opt-in individuals who: performed patient transportation services for Defendants, who did not sign enforceable agreements to arbitrate FLSA claims, who were misclassified as independent contractors, and who did not receive overtime wages.

15.     Potential opt-in members of the collective action are similarly situated to Plaintiff. They all held the same job positions and had substantially similar job requirements and pay provisions. They are or were subject to the same independent contractor agreement, common practices, policies, and plans of Defendants. They all suffered damages in the nature of lost overtime wages resulting from Defendants' wrongful conduct.

## STATEMENT OF FACTS

16. On or around May 2021, S&W presented Plaintiff with a "Contractor Agreement," setting forth the qualifications and training required, and compensation structure, for work as a Patient Transporter (the "Contract"), along with requisite policies and procedures. A true and accurate copy of the Contract is attached to this Complaint at Exhibit B.

17. Upon information and belief, Defendants also presented identical or substantially similar contracts to all other similarly situated Patient Transporters.

18. Defendants are in the business of providing non-emergency transport of medical patients to and from hospitals or health care provider offices for compensation.

19. During the last three years, Plaintiff and other similarly situated individuals worked as Patient Transporters for Defendants. In this role, Plaintiff and other similarly situated Patient Transporters were responsible for providing non-emergency transport of medical patients to and from hospitals or health care provider offices.

20. Defendants purport to contract with individuals to perform such transportation services. Defendants purport to call these individuals "independent contractors," not employees, thereby avoiding their obligations to pay payroll taxes, workers' compensation insurance, health insurance, unemployment insurance, overtime, and such other benefits.

21. Pursuant to the Contract, in order to be hired by Defendants, Plaintiff and other similarly situated Patient Transporters were required to undergo stringent background checks and drug tests.  Exhibit B.

22. Under the Contract, Plaintiff and all similarly situated individuals were required to lease the work vehicle from Defendants at a rate of $3.00 per hour, the sides of which vehicle displayed one of the Defendants' logos.

23. Under the Contract, Plaintiff and all those similarly situated were required to "share the fuel expense" for the work vehicle with Defendants at $2.00 per hour worked.

24. Upon information and belief, the vehicle issued to Plaintiff and all others similarly situated for use in providing transportation services is a 2008 Dodge Caravan, with a six-passenger capacity and weighing less than 10,001 pounds.

25. According to the Contract, Defendants required Patient Transporters, including Plaintiff, to wear "Company approved uniforms at all times," consisting of "black pants and [a] golf shirt with company logo." Exhibit B at 1.

26. The so-called "independent contractor" Patient Transporters that work for Defendants, including Plaintiff, are required to work a mandatory six (6) days per week.

27. During the time Plaintiff and other similarly situated Patient Transporters performed transportation services for Defendants, Plaintiff and others similarly situated performed work exclusively for Defendants because they were required to work six (6) days a week and over forty (40) hours, and therefore could not simultaneously provide any other such services or maintain other employment, except those provided to Defendants.

28. Plaintiff and others similarly situated were not allowed to choose their days of work and are/were required to request from Defendants days off from work at least two (2) weeks in advance.

29. Pursuant to the Contract, Plaintiff and others similarly situated were required to "devote all of his/her working time, attention, knowledge and skills to [Defendants'] business interests." Exhibit B at 2.

30. Under the Contract and through training, Defendants gave Patient Transporters specific instructions as to how to respond to transportation calls, interacting with Defendants' clients, and performing transportation services, such as that they "must exit the vehicle to open and close vehicle doors when passengers enter or exit and provide assistance as necessary to or from the main door of the origination or destination." Exhibit B at 4-5.

31. Further, pursuant to the Contract, Defendants required Plaintiff and all others similarly situated Patient Transporters to attend trainings including but not limited to: defensive driving, First Aid, CPR, "Spill Kit" use, Bio-Hazard Removal, passenger assistance, wheelchair securement, and safety and sensitivity training in order to perform their duties. Exhibit B at 1.

32. Pursuant to the Contract, Plaintiff and others similarly situated were required to be "certified" by Defendants in order to perform services for Defendants. Id.

33. Pursuant to the Contract, Defendants decided in their "sole discretion on the standard for an acceptable driving record" in order to perform services for Defendants.

34. Defendants insured the company-provided vehicles utilized by Patient Transporters, and Patient Transporters were not required to have their own insurance for same.

35. Under the Contract, Defendants mandated that Plaintiff and those similarly situated maintain a detailed "Daily Trip Log" with specific enumerated requirements. Exhibit B at 4.

36. Patient Transporters, including Plaintiff, worked well over forty (40) hours per week but, upon information and belief, none of these Patient Transporters receive or received any overtime wages for the work performed beyond forty (40) hours a week.

37. For example, during a typical workweek, Plaintiff worked six (6) days per week, Monday through Friday from 4:00 AM until 6:00 PM (fourteen (14) hours per day), and Saturdays from 4:00AM to 1:00PM (nine (9) hours per day).

38. As evidenced by the Contract and its terms, there is virtually no opportunity for Patient Transporters, including Plaintiff, to work for any other companies performing similar services as Defendants because Defendants exercise strict control over how their schedules and how their time is spent during the workday, including but not limited to the following specific "Performance Terms" enumerated in the Contract:

- "require to wait up to ten (10) minutes beyond the scheduled Pick up time for the passenger to board the vehicle"; and

- "[a]ny deviation from the schedule time of more than fifteen (15) minutes is not acceptable as timely service. For 'Will Call' return pick-up from an appointment, the vehicle shall arrive within one (1) hour of the time the Contractor is notified of the return trip and/or no later than the normal close of the business day of the medical service provider."

Exhibit B at 3.

39. The Patient Transporters, including Plaintiff, effectively worked for Defendants on a full time and continuing basis; Plaintiff did not sell or advertise her services to the general public or work as a contractor for anyone other than Defendants.

40. Additionally, Patient Transporters, including Plaintiff, are not permitted to negotiate the price of the transportation services with either the medical patients or Defendants.

41. The Patient Transporters, including Plaintiff, were paid $12.00 per hour for the work they performed for Defendants.

42. Defendants did not provide notices to Plaintiff or others similarly situated explaining the FLSA.

43. Upon information and belief, because Defendants considered Plaintiff and all others similarly situated "independent contractors," Defendants entirely failed to account for all of the time Plaintiffs actually worked or were subject to work for Defendants by not utilizing any time-tracking method approved by the FLSA or otherwise.

44. Even though Plaintiff could not work for anyone else because she worked an average of approximately eighty (80) hours per week, Defendants failed and refused to pay Plaintiff or their other similarly situated individuals overtime wages calculated at time and one-half of her/their regular hourly rates for all hours worked over forty (40) hours in a given workweek.

45. Plaintiff retained the undersigned counsel and agreed to pay a reasonable fee for all services rendered.

46. The additional persons who may become Plaintiffs in this action are current and

former employees of Defendants who are/were subject to the payroll practices and procedures of Defendants and who were not paid overtime wages. These additional persons are readily identifiable from records maintained by Defendants and necessarily will present legal and factual issues which are nearly the same, if not identical, to those presented by Plaintiff.

**FIRST CAUSE OF ACTION**
**Violation of Fair Labor Standards Act, 29 U.S.C. § 207**
**(Brought on behalf of Plaintiff and the FLSA Collective)**

47. Plaintiff realleges each and every allegation contained above as if repeated here verbatim.

48. This cause of action arises from Defendants' violations of the FLSA, 29 U.S.C. § 207, for their failure to pay Plaintiff and others similarly situated at the overtime rate for all hours worked in excess of forty (40) per workweek.

49. As set forth above, Plaintiff, and all others similarly situated, were employed by Defendants, and were intentionally misclassified as independent contractors.

50. At all times relevant hereto, Defendants engaged in interstate commerce or in the provision of services for commerce as defined by 29 U.S.C. § 203(r) and 203(s).

51. At all times relevant hereto, Defendants' annual gross income of sales made, or business done was not less than Five Hundred Thousand and 0/100 ($500,000.00) Dollars.

52. The business of Defendants was and is engaged in commerce as defined by § 203(s) and, as such, Defendants are subject to and covered by the FLSA.

53. For the reasons set forth in this Complaint, Plaintiff asserts that under the economic realities test of the FLSA, Plaintiff and others similarly situated are or were improperly

classified as independent contractors rather than employees of Defendants, and that Defendants exercised sufficient control over their day-to-day activities, and economic circumstances, to make Plaintiff and others similarly situated statutory employees under the FLSA. Plaintiff and others similarly situated are therefore covered employees under the FLSA.

54.     Plaintiff and other similarly situated individuals regularly work or worked more than forty (40) hours per week every week.

55.     Defendants willfully and intentionally refused to pay Plaintiff and other similarly situated current and former employees overtime wages at a rate of one and one-half times the regular rate of pay for each of the overtime hours they worked during the relevant time period.

56.     Defendants recklessly refused to investigate whether their failure to pay Plaintiff and the other similarly situated individuals an overtime wage for all overtime hours they worked during the relevant time period violated the Federal Wage Laws of the United States; intentionally misled employees to believe that Defendants were not required to pay overtime; and/or concocted a scheme pursuant to which they deprived Plaintiff and the putative class members of the overtime pay they earned by making payments to Plaintiff (and the putative class members) as independent contractors, and then failed to timely correct their violation after having known and been put on notice of same.

57.     Plaintiffs and the members of the class are entitled to a back pay award of overtime wages for all overtime hours worked, plus an equal amount as a penalty, plus all attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### Declaration of Rights, 28 U.S.C. §§ 2201, 2202
**(Brought on behalf of Plaintiff and the FLSA Collective)**

58. Plaintiff realleges each and every allegation contained above as if repeated here verbatim.

59. Plaintiff and Defendants have a pending dispute under the Fair Labor Standards Act, which this Court has jurisdiction to decide pursuant to 29 U.S.C. §1331. The Court also had jurisdiction over Plaintiff's request for a declaration of rights pursuant to 28 U.S.C. §§ 2201, 2202.

60. Defendants did not rely on a good faith defense in not paying Plaintiff and the other similarly situated employees their overtime wages.

61. A declaration of rights would serve the useful purpose of clarifying and settling the legal relations at issue, including whether Plaintiff and the other similarly situated current and former employees of Defendants were employees (and misclassified as independent contractors) of Defendants, whether Defendants failed to comply with the timekeeping requirements of the FLSA, and failed to comply with other regulations of the FLSA.

62. The entry of a declaration of the rights of the parties herein would afford relief from uncertainty, insecurity, and controversy giving rise to this proceeding as affecting Plaintiffs and all other current and former employees of Defendants now and in the future.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually, and on behalf of all other similarly situated persons, respectfully requests that this Court grant the following relief:

a.  An order authorizing the sending of appropriate notice to current and former employees of Defendants who are potential members of the collective action under the Fair Labor Standards Act;

b.  A declaratory judgment that Defendants have willfully and in bad faith misclassified Plaintiff and other similarly situated FLSA Collective Members, violated the overtime wage provisions of the FLSA, and have deprived Plaintiff and the FLSA Collective Members of their rights to such compensation;

c.  An order requiring Defendants to provide a complete and accurate accounting of all the overtime wages to which Plaintiffs and the FLSA Collective Members are entitled;

d.  An award of monetary damages to Plaintiff and the FLSA Collective Members in the form of back pay for unpaid overtime wages due, together with liquidated damages in an equal amount;

e.  Monetary judgment against Defendants, jointly and severally as joint and co-employers, for monetary damages awarded Plaintiff and the FLSA Collective Members;

f.  Injunctive relief ordering Defendants to amend their wage and hour policies to comply with applicable laws

g.  Pre-judgment interest;

13

  h. A service award to Plaintiff for representing the FLSA Collective Class;

  i. That the Court certify the instant suit as an opt-in class action under 29 U.S.C. §216(b) for all similarly situated individuals who elect to join these proceedings;

  j. That the Court declare the rights and duties of the parties consistent with the relief sought by Plaintiff;

  k. Attorneys' fees and costs; and

  l. Such further relief as the Court deems just and proper.

           Respectfully submitted,

Dated: September 17, 2021    /s/ Casey Martens
           Casey Martens (#12812)
           Molly R. Hamilton Cawley (#11838)
           MHC Law, LLC
           460 King Street, Suite 200
           Charleston, SC 29403
           Tel: (843) 225-8651
           Casey@mhc-lawfirm.com
           Molly@mhc-lawfirm.com

           **ATTORNEYS FOR PLAINTIFF**

## VERIFICATION

I, Casey Martens, declare as follows:

I am the attorney for Plaintiff and have read the foregoing Complaint (FLSA Collective Action) with Jury Demand and know the contents thereof. I am informed and believe that the matters stated therein are true and, on that ground, allege that the matters stated therein are true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 17th day of September 2021, at Charleston, South Carolina.

<u>/s/ Casey Martens</u>
Casey Martens